UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MAURICE BELLAFONTA CATHEY, a/k/a Short, and CORROD LEON PHILLIPS, <br><br> Defendants. | 4:18-CR-40097-KES <br><br><br> ORDER DENYING DEFENDANTS' MOTIONS FOR A NEW TRIAL UNDER RULE 33 AND MOTIONS FOR ACQUITTAL UNDER RULE 29 |

Defendants, Maurice Bellafonta Cathey and Corrod Leon Phillips, each filed a Rule 33 motion for a new trial and Rule 29 motion for judgment of acquittal. Dockets 123-126. The government opposes all motions. Dockets 128, 129, 131, 132. For the following reasons, defendants' motions are denied.

**BACKGROUND**

Defendants were charged in a second superseding indictment filed on September 10, 2019. Docket 66. Count 1 charged both Cathey and Phillips with conspiracy to distribute heroin; Count 2 charged both Cathey and Phillips with conspiracy to distribute cocaine base; Count 3 charged only Cathey with distribution of a controlled substance resulting in the death of Layne Diaz; Count 4 charged only Cathey with distribution of a controlled substance resulting in the serious bodily injury of Shania Hofer; Count 5 charged both Cathey and Phillips with distribution of a controlled substance resulting in the serious bodily injury of Ty Olson.; and Count 6 charged only Phillips with

distribution of a controlled substance resulting in the serious bodily injury of Devlin Tommeraasen. *Id.* A jury trial began on November 12, 2019. Docket 117 at 1. The government rested on Wednesday, November 20. *Id.* at 4. Cathey and Phillips rested later that afternoon. *Id.* The jury returned a verdict of guilty on all counts, as to both defendants, that evening. *Id.* at 5; *see* Docket 116.

## I.     Motions for a New Trial Under Rule 33

During trial, defendants made several mistrial motions and objections that were denied by the court. *See* Docket 123 at 2, 3, 4, 5, 8; Docket 125 at 2, 3, 4, 5, 8; Docket 128 at 2; Docket 131 at 2. Defendants now move for a new trial based on these denied motions. First, defendants moved for a mistrial because there were no African American prospective jurors on the venire panel. Second, defendants moved for a mistrial because the government allegedly violated the court's sequestration order. Third, defendants moved to strike the testimony of Candace Tschetter, who was granted use immunity shortly before testifying. Fourth, defendants objected to the government's description of the definition of "but for" causation during its closing argument. Fifth, defendants objected to Final Jury Instruction No. 9, which defined "but for" causation. Defendants now raise a sixth basis for a new trial based on their assertion that the government failed to prove Cathey and Phillips' guilt beyond a reasonable doubt.

### A.     Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure allows defendants to move the court to "vacate any judgment and grant a new trial if the interest of

justice so requires." Fed. R. Crim. P. 33(a). The district court may grant or deny a motion for new trial based on its "sound discretion." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (internal quotation omitted). The court may "weigh the evidence, disbelieve witnesses, and grant a new trial even when there is substantial evidence to sustain the verdict[.]" *Id.* The court is not required to view the evidence in the light most favorable to the non-moving party, the government, and may independently consider the evidence presented. *See United States v. Brown*, 956 F.2d 782, 786 (8th Cir. 1992). But "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Campos*, 306 F.3d at 579. Rule 33 authority must be exercised "sparingly and with caution." *Id.* (internal quotation omitted). A new trial under Rule 33 is an "unusual remedy that is reserved for 'exceptional cases in which the evidence preponderates heavily against the verdict.' " *United States v. Starr*, 533 F.3d 985, 999 (8th Cir. 2008) (quoting 3 Charles Alan Wright, Nancy J. King, & Susan R. Klein, *Federal Practice and Procedure* § 553 (3d ed. 2004)).

### B.  Whether the Venire Panel was Improperly Drawn

Cathey and Phillips first argue that the court should have granted their motion for a mistrial because all the potential jurors on the venire panel were white. *See* Docket 123 at 2; 125 at 2. Defendants are both African American. At trial, defendants argued that the jury was not composed of a fair cross-section of the community. The court denied the motion during voir dire.

The Sixth Amendment guarantees a criminal defendant's "right to trial by an impartial jury drawn from a fair cross-section of the community." *United States v. Evans*, 830 F.3d 761, 769 (8th Cir. 2016) (internal quotation omitted). But "[t]he Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process." *Id.* at 769-70 (internal quotation omitted). A fair cross-section violation requires three elements:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community, such as African-Americans; (2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to 'systematic exclusion in the jury selection process.'

*Id.* at 769 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

While Cathey and Phillips meet the first requirement, that African Americans are a "distinctive group in the community," they fail to establish the second and third requirements. The District of South Dakota, where Cathey and Phillips were charged and tried, comprises the state of South Dakota. According to a July 1, 2019 estimate by the United States Census, around 2.4 percent of South Dakota's 884,659 citizens are Black or African American. See U.S. Census Bureau Quick Facts: South Dakota, census.gov/quickfacts/SD (last visited January 22, 2020). Thus, a 30-person venire drawn at random from the residents of South Dakota would yield, on average, less than one individual who identifies as Black or African American. Cathey and Phillips do not show that the all-white venire "is not fair and reasonable in relation to" the

number of African Americans in the District of South Dakota. *Evans*, 830 F.3d at 769. Also, defendants make no argument that there is "systematic exclusion" of African Americans in the jury selection process. *Id.* Thus, the court did not err in ruling against defendants' motion for a mistrial because of the composition of the venire. Defendants' Rule 33 motions cannot succeed on this basis.

**C.** **Whether the Government Violated the Court's Sequestration Order**

On Friday, November 15, 2019, the government called Nicole Hollaar as a witness. Docket 117 at 3. The court recessed that afternoon, in the middle of Hollaar's testimony. *Id.* Hollaar returned and was further questioned by the government on direct examination on Monday, November 18, 2019. *Id.* Over the weekend, the government became aware that Hollaar had offered false testimony about not knowing Cathey. Docket 128 at 5. The government contacted Hollaar's attorney and offered her use immunity for her continued testimony. *Id.* On Sunday, November 17, 2019, defendants became aware that the government met with Hollaar and provided her use immunity. Docket 123 at 3; Docket 125 at 3. They moved to strike her testimony and for a mistrial. Docket 123 at 3; Docket 125 at 3. The court denied those motions, but limited Hollaar's further testimony on direct to correct her prior false testimony. Docket 128. And defendants both had an opportunity to fully cross-examine Hollaar.

Defendants argue that the government violated the court's sequestration order and their Due Process rights. Rule 615 of the Federal Rules of Evidence states that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evidence 615. "This rule does not by its terms forbid an attorney from conferring with witnesses during trial." *United States v. Calderin-Rodriguez*, 244 F.3d 977, 984 (8th Cir. 2001). "Nor is it inherently unethical for a lawyer to speak to a witness once the witness has begun to testify." *Id.* "It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties[.]" *Perry v. Leeke*, 488 U.S. 272, 281 (1989). But a prosecutor may not "introduce or elicit testimony known to be false." *United States v. White*, 724 F.3d 714, 716-17 (8th Cir. 1984). Thus, the court found that the government's communications with Hollaar were not improper, as they were aimed at ensuring the government corrected the testimony it knew to be false.

Also, even if the conversation was improper under the sequestration order, the "court would still have wide latitude in deciding how to respond to the impropriety." *Calderin-Rodriguez*, 244 F.3d at 985. After defendants' objections to Hollaar's testimony, the court limited any improper effects of the government's weekend meeting by limiting Hollaar's further testimony to correcting her prior false statements. Thus, even if the meeting was inappropriate, its effects did not violate defendants' Due Process rights by giving the government an unfair opportunity to coach its witness.

**D.      Whether the Court Erred in Admitting Tschetter's Testimony**

Candace Tschetter testified as a witness for the government on Tuesday, November 19, 2019. Docket 117 at 4. Defendants allege that the government met with Tschetter and her attorney to discuss her testimony and provide her with use immunity for her testimony before trial began that morning. *See* Docket 123 at 4; Docket 125 at 4. Defendants state that the government "purposely failed to inform [Cathey or Phillips] or the Court about the immunity deal, until Ms. Tschetter took the stand and began her testimony." Docket 123 at 4; Docket 125 at 4. The government states that it did not provide Tschetter with immunity until she began her testimony, because it received approval from the United States Attorney just before trial began that morning. Docket 128 at 6-7; Docket 131 at 7. Phillips and Cathey objected to Tschetter's testimony. Docket 128 at 7; Docket 131 at 6. The court found that the late notice of the use immunity grant was not prejudicial to the defense and denied the motion.

The government argues that defendants were not prejudiced because they were on notice well in advance of trial that Tschetter's testimony would not be used against her by the government. Docket 128 at 7; Docket 131 at 7. The government provided a proffer letter to defendants "almost two weeks" before trial. Docket 128 at 8; Docket 131 at 7. The letter advised Tschetter that any information and testimony she provided about illegal activities of others would not be used directly against her in any criminal proceeding. Docket 128 at 7; Docket 131 at 7. This mirrors the protections afforded by use immunity,

which proscribes direct use of a witness's testimony in a criminal case against the witness. *See Kastigar v. United States*, 406 U.S. 441, 453 (1972). Thus, defendants were on notice that Tschetter was protected before the morning she was officially granted use immunity.

Even if the proffer letter did not provide defendants notice, defendants had the opportunity to cross-examine and impeach Tschetter after they learned she had received use immunity. Thus, defendants were not prejudiced by Tschetter receiving use immunity for her testimony and the court did not err in overruling their objections.

### E.     Whether the Government's Closing Argument Incorrectly Described "But For" Causation

Defendants argue that the government misstated the definition of "but for" causation in its closing argument, and that the court should have sustained their objection to the alleged misstatement of law. Docket 123 at 5; Docket 125 at 5. According to defendants, the government improperly advised jurors that since Olson and Tommeraasen recovered from the administration of Naloxone, which reverses the effects of heroin, jurors could conclude that heroin was the "but for" cause of the overdoses. Docket 123 at 5-8; Docket 125 at 5-8.

Defendants allege that the government mistakenly used the "contributing factor" test when it argued to the jury that the effective use of Naloxone shows that heroin was a "but for" cause of the victims' overdoses. Docket 123 at 6; Docket 125 at 6. Defendants note that the "contributing factor" test was rejected by the Eighth Circuit in *United States v. Ford*, 750 F.3d 852 (8th Cir.

2014). Docket 123 at 6; Docket 125 at 6. The government's attorney read aloud

Final Instruction No. 9, which closely parallels the Supreme Court's definition

of "but for" causation in *Burrage v. United States*, 571 U.S. 204, 211-12 (2014),

before arguing to the jury how the successful Naloxone administration showed

that heroin was the "but for" cause of the victims' overdoses. Docket 128 at 8-

9; Docket 131 at 8. Thus, the court did not err when it overruled defendants'

objections that the government incorrectly argued "but for" causation to the

jury.

### F. Whether Final Jury Instruction No. 9 Incorrectly Instructed the Jury on "But For" Cause

Final Instruction No. 9 stated:

> The prosecution must prove that serious bodily injury or death
> resulted from the unlawfully transferred controlled substance, not
> merely from a combination of factors to which the drug use
> contributed. This is known as 'but for' causation. For example,
> where A shoots B, who is hit and dies, we can say that A caused
> B's death, because but for A's conduct, B would not have died. The
> same thing is true if a person's act combines with other factors to
> produce the result, so long as the other factors alone would not
> have produced the result—the straw that broke the camel's back,
> so to speak. Thus, if poison is administered to a man debilitated by
> multiple diseases, the poison is a 'but for' cause of death even if
> the diseases played a part in his deterioration, so long as, without
> the effect of the poison, he would have lived.

Docket 114 at 19.

This instruction is nearly identical to the definition of the phrase

"death results" laid out by the Supreme Court in *Burrage*. 571 U.S. at

211-12. Defendants argue that these examples should not have been

used. Docket 123 at 8-9; Docket 125 at 9-10. They argue that the court

should have instructed the jury using the baseball metaphor that follows

9

the poison and shooting examples in *Burrage*. Docket 123 at 8-9; Docket 125 at 9-10. Defendants seem to argue that because the examples that were used result in death, they were not appropriate ways to describe what "but for" causation is on the counts where only serious bodily injury was charged. Docket 123 at 8-9; Docket 125 at 9-10. But Cathey faced a charge that included the "death results" language interpreted in *Burrage*. *See* Docket 66. And the resulting in serious bodily injury analysis is not substantially different than resulting in death—jurors would simply be determining whether heroin was the "but for" cause of an overdose from which the victim recovered instead of a deadly overdose.

The court is not limited to or required to use only pattern jury instructions. *United States v. Ridinger*, 805 F.2d 818, 820-21 (8th Cir. 1986). Defendants did not request during trial that the baseball metaphor be used in place of the poison and shooting metaphors that were used. *See* Dockets 76, 77. The final instructions were taken directly from recent Supreme Court interpretation of "but for" causation in the context of a "resulting in death" charge in *Burrage*. Thus, the court did not err in including Final Instruction No. 9.

### G. Whether the Government Proved Cathey and Phillips' Guilt Beyond a Reasonable Doubt

Defendants argue that the government failed to prove their guilt beyond a reasonable doubt and that as a result, the court should vacate the judgment

and grant a new trial. Docket 123 at 9; Docket 125 at 10. Defendants argue that the jury's verdict is "clearly contrary to the manifest weight of the evidence presented." Docket 123 at 10; Docket 125 at 10.

Defendants assert that the government presented weak and uncorroborated evidence to prove its case, especially relating to Counts 5 and 6. They argue, first, that Tommeraasen and Hofer were unreliable witnesses. Docket 123 at 10, 13; Docket 125 at 11. Hofer was high on heroin when she purchased from Phillips the heroin on which Olson later overdosed. Docket 123 at 10-11; Docket 125 at 11. And Tommeraasen was high on methamphetamine at the time he purchased heroin from Phillips. Docket 123 at 13. "[I]t is the jury's prerogative to evaluate the credibility of witnesses in light of their prior drug abuse or addiction." *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010). By determining that Tommeraasen and Hofer did purchase their heroin from Phillips, the jury appears to have validly determined that those witnesses were credible.

Defendants also argue that Tommeraasen and other witnesses were unreliable because they were testifying under Rule 35 agreements to cooperate or had received use immunity for their testimony. Docket 123 at 13. But the jury was not required to disbelieve all such witnesses' testimony. Rather, the jury was entitled to give each witness's testimony the weight they saw fit based on all the circumstances. Defendants were able to impeach such witnesses' credibility during cross examination and remind jurors of their alleged motives to lie during closing arguments. Thus, that jurors may have chosen to believe

11

such witnesses despite cooperation agreements does not require the "unusual remedy" of a new trial under Rule 33. *Starr*, 533 F.3d at 999.

Defendants also argue as to Count 5 that insufficient evidence exists to conclude Olson's heroin ingestion was the "but for" cause of his overdose. Docket 123 at 12-13. They argue that because Olson's toxicology report revealed that he had benzodiazepine in his system at the time he overdosed, heroin cannot be shown to be the "but for" cause of his death. *Id.* Similarly, they argue that the fact that naloxone reversed the effects of his overdose does not show heroin was the "but for" cause of his death. Docket 123 at 11-12; Docket 125 at 11-12. Dr. Kenneth Snell testified that Olson had a substantial risk of death due to ingestion of opiates that led him to overdose. Docket 128 at 10. Defendants argue that his testimony and the fact that naloxone revived Olson do not mean heroin was the "sole cause" of his overdose. Docket 123 at 11, Docket 125 at 12. But the government is not required to prove that heroin was a "sole cause," only that it was a "but for" cause. *See Burrage*, 571 U.S. at 211-12. So long as the government proved beyond a reasonable doubt that the overdose would not have occurred "but for" his ingestion of heroin, the government met its burden. Defendants did not show that the weight is so against the verdict that "a miscarriage of justice will occur" if a new trial is not ordered. *Campos*, 306 F.3d at 579. Thus, "the jury's verdict must be allowed to stand" on Count 5. *Id.*

Phillips also argues that Tommeraasen had recently used methamphetamine, which precludes a finding that heroin was the "but for"

cause of his overdose. Docket 123 at 13. This is not so. As with the benzodiazepine and heroin in Olson's system, the government was not required to prove beyond a reasonable doubt that heroin was the *sole* cause of Tommeraasen's overdose, only that it was the "but for" cause of Tommeraasen's overdose. Snell's testimony, combined with the administration of naloxone and testimony of the EMTs who revived Tommeraasen, is sufficient to prove that heroin *was* a "but for" cause of Tommeraasen's overdose. Thus, Phillips did not make a sufficient showing for a new trial on Count 6.

## II.     Motions for a Judgment of Acquittal Under Rule 29

### A.     Legal Standard

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The jury verdict "must be upheld if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (internal quotation omitted).

### B.     Whether Sufficient Evidence Exists to Sustain the Guilty Verdicts

Defendants offer nearly identical arguments under their Rule 29 motions as compared to the insufficiency of the evidence arguments of their Rule 33 motions on Counts 5 and 6. *Compare* Docket 123 at 10-16 *with* Docket 124 at

1-8; *Compare* Docket 125 at 10-13 *with* Docket 126 at 1-5. The legal standard

for Rule 29 motions is more stringent and deferential to the jury than that of a

Rule 33 motion. In Rule 33 motions, the court may independently consider the

evidence presented. *Brown,* 956 F.2d at 786. In Rule 33 motions, however, the

verdict must stand unless no interpretation of the evidence exists that could

lead a reasonable-minded jury to find the defendant guilty beyond a reasonable

doubt. *Espinoza,* 885 F.3d at 520.

As discussed above, the court finds that defendants do not meet the

standard under Rule 33 to merit a new trial. Thus, defendants cannot show

that they meet the higher, more jury-deferential standard of Rule 29. Thus,

defendants' Rule 29 motions for a judgment of acquittal are denied as to

Counts 5 and 6.

Cathey included several brief paragraphs arguing that his conviction

cannot be sustained on Counts 1, 2, 3, and 4. Docket 126 at 5. He makes

cursory arguments based on credibility of witnesses and the same "but for"

cause argument advanced in Counts 5 and 6. He does not meet the high

burden of showing that there is no interpretation of the evidence that could

lead a reasonable jury to find Cathey guilty beyond a reasonable doubt. Thus,

Cathey's Rule 29 motion is denied as to Counts 1, 2, 3, and 4.

**CONCLUSION**

Defendants' Rule 33 motions did not show that manifest injustice will

result if defendants are not granted a new trial. Defendants' Rule 29 motions

did not show that no reasonable jury could have found defendants guilty beyond a reasonable doubt based on the evidence. Thus, it is

ORDERED that defendants' Rule 29 and Rule 33 motions (Dockets 123, 124, 125, and 126) are denied.

Dated January 27, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE